May it please the Court, my name is Lon Dale. I appear here on behalf of the appellants, plaintiffs, David and Conscious Streeter. What we have before the Court is, of course, summary judgment. Our position is that summary judgment in this case was inappropriate because there are significant and multiple issues of genuine fact that should have been determined by the jury. I'm going to break my argument into three sections this morning. First of all, I want to talk about some of the factual circumstances that support the presence of genuine issues of fact. Secondly, I want to address the digital issue that was the cornerstone of the magistrate and the Article 3 judges' decision in regard to summary judgment. And thirdly, I'd like to address the issues concerning the claims that the Court found to be moot that we would advance in the event that there's a jury trial, which we think in and of themselves support the fact that there's significant issues of genuine fact that preclude summary judgment in this case. First of all, I want to address something that was kind of piecemeal in the briefing and in reviewing the briefing. I believe that the panel needs to have a summary of issues that were rather fractionalized pertaining to causation on fires. All of the experts have relied on 921 of the National Fire Protection Association's guides for investigation of fires. They all testified that they complied with the provisions and this is the Bible of investigation of fires. One point that I want to make because of this fractionalization is that the guides make it very clear that there's four categories for causation and every fire has to fall into one of these four categories in accordance with the incendiary and undetermined. Briefly, I'd like to go through the guidelines definitions for each of them because they're very important in regard to the issue before the court as to whether or not a summary judgment was appropriate. And I'm paraphrasing from the guides here. Accidental is defined as a situation where a fire is caused by a human event but it's unintentional. Natural is a situation where there's no human involvement. A good example of that would be lightning. No human involvement but a fire is caused by lightning. The third category is incendiary. Incendiary is defined under the guides to be a intentionally caused by a human event. The fourth category is undetermined. Now the way the guides work is that they have established a scientific protocol that the experts are to follow. The reason that 921 was established by the and there's lots of case law on it, that innocent people were being wrongfully convicted. And so they established for arson and they established these protocols to make sure that as a scientific analysis went into it to basically satisfy the the Daubert concerns that the court is well concerned about. Okay, with that background I'd like to go to my first topic which is the question of genuine issue of fact relating to the circumstances that occurred in this instance. I've had the opportunity to represent both insureds and insurers in regard to fire issues. I've been doing this kind of work for a long time. One of my first cases tried to verdict was in the 1980s. Its appeal to the Montana Supreme Court is still cited today in any fire case that happens in Montana, Britain versus farmers. Now what have I learned about handling these cases both for insurers and insureds? There's two things, two topics that have to be satisfied in the event that an insurer is going to deny a claim, a fire claim based upon the insured's actions. Those two aspects are motive and physical facts. If you, Dale, I don't want to interrupt you but I think in terms of time constraints, the matter of the genuine issue of material fact here is the question is whether or not there was a genuine issue of material fact as to cooperation, not as to an issue of fact as to the cause of the fire. Isn't that correct? That's what's before the court here. That's correct, Your Honor. And I don't mean to interrupt you. I'm just trying to make sure we maximize your time. The point is is that there are two fires that occur within a period of 24 hours, correct? That's correct. And then it triggered a potential investigation as you've noted under the national fire standards in terms of whether it would be incendiary or even undetermined essentially, correct? That's correct. Okay, and so based upon that there was an inquiry with respect to whether or not there was potential arson or not and there was no ultimate denial. The insurance carrier here paid over $644,000 to your clients, correct? I'm just trying to make sure we're clear on the facts so I have them wrong. There was no absolute denial. Money was paid and the issue here before the court is the matter of the granting of summary judgment as to whether or not there's any genuine issue of material fact with respect to the cooperation or lack thereof by the streeters with respect to an inquiry. That's what's before us here today, correct? I agree with that, Judge Bennett, but here's my point. If there is no fact to support that there was ever a incendiary fire, then cooperation or prejudice has no bearing and that's where I'm getting, that's where I'm headed on this right now. So that seems at odds with your other argument that the Montana Supreme Court ought to be getting a certification on what is cooperation when you're telling us that cooperation is kind of irrelevant because you have this factual issue. So which is it? Judge McEwen, I would, I'm putting that about it in our briefing, but my point being that this case should be reversed on the basis of the presence of genuine issues of fact and therefore... Let me just understand though because as you went down the beginning, as Judge Bennett said, we're trying to understand the framework for your argument. Apart from the certification, you also talk about how the district court, in your view, used the wrong law on cooperation and eerie guessed, which I thought was a very clever and interesting phrase. I hadn't heard that before, but I thought that was a very interesting way to put it. So is your argument now that there's a genuine issue of material fact and therefore it needs to go back and what is the genuine issue of material fact? Okay, that was where I was headed before Judge Bennett asked the question. I've got a, I see my time period, I'm going to move on. Here's the point that I was going to make in terms of the physical facts and the motive. I mean, the streeters have absolutely no motive to cause this fire. Just answer the question first, which we need to figure out under the summary judgment. What is the material issue of fact? The material issue of fact, Judge McEwen, is whether or not this fire was an incendiary fire. And our position is there's no, there's no factual support that it was. And so therefore, if there's no factual support for it being an incendiary fire, then the issue of cooperation is a moot issue because it's a minor issue in the overall scheme of things. Let me just, then I understand that. Let me, let me quickly on whether or not your clients were guilty of some form of impropriety. But that really doesn't cover the gamut, does it, Mr. Dale? And that it may be that the inquiry has to do with whether or not there may be another person or another entity that may have lent to it in some way, say, hypothetically, a contractor who worked in the area near where the fire exploded. And there may or may not be potentiality for subrogation by the insurance company. Obviously, if you've represented insurance companies, you would agree that sometimes there are subrogation claims that arise as to a third party who may have been responsible through negligence or whatever for a fire that occurs, does it not? Oh, of course, Your Honor. Sure. And my point is, is that we seem to be jumping into the matter of, well, the investigation is of no moment unless your clients are found to be guilty of some impropriety. But it seems to me that the material fact here is about whether or not there's cooperation or not and whether or not cooperation was ultimately withdrawn. And the issue may be that the insurance company's entitled to make sure the investigation is concluded, not necessarily to determine impropriety on the part of your clients, but just to determine if there are any other bases, whether it's undetermined or whether it's incendiary or natural, with respect to potential subrogation claims that happen many times in these cases. Correct? Well, I mean, but subrogation was never brought up as an issue in this case, Your Honor. Well, no, I'm saying, but I'm just trying to follow your argument about the fact that it's not material. I mean, Judge McKeown and I were inquiring in terms of the genuine issue of material fact. From your point of view, is the lack of responsibility of your clients, and that's the end of the inquiry, and there's no prejudice. And my point is, there can be prejudice having nothing to do with whether or not your clients were ultimately responsible for the fire. It may be other matters that the insurance company was seeking to get further information of what the cause of the fire was. Well, I'm looking at the clock here. Yeah, and I'm sorry, but my question took so long, I'm sure Judge Gould will give you more time. I just, I've got to make some points here. Okay, sure. Obviously, I'm running out of time. My point was that there is absolutely no support in the facts for there being any motive on the part of the streeters to cause this fire. So therefore, I mean, here's a critical fact, and I'm going to have to get it out here. The insurance company did an investigation. They had a cause and origin person come to this fire within a few hours of the fire event. Our client totally cooperated with that individual, provided and answered all of their questions about what the I think has perhaps been lost in the briefing. You know, our clients did not get a copy of that report for 17 months. 17 months. The streeters initial attorney asked for, hey, what's going on in this case? Can we get the claims file? No, no So we don't even have a copy of the claims file. We don't have a copy of the investigator's report. Here's the guy that was on the scene, and what did he... I appreciate all that, but your argument, certainly not going down the path of your brief, so that's what I mean. Your brief says that, you know, your whole emphasis is on cooperation and the Erie gas, and then there's a brief mention of the digital records. So if you want us to reverse, because there's a material issue of fact, I'm still not sure what that issue is, and that's not really the focus of your brief. Although, you know, we're looking to Novo, so I appreciate that. I got to make a point here, because I'm running out of time. Could you answer my question, and maybe that would be part of your point. And also... I'm getting there. Here's my point. 17 months down the road, 17 months down the road, we get the claims file, and we get the report from the investigator. Now, this is their investigator. Their investigator, that they don't even want to use, is their expert witness. We're, for the first time in 52 years of practicing law, we're using their expert as our expert in this case. Now, here's an important... I respect the court's attention to ER 458. So when we got the claims file, and we got the report, we finally got the report from Mr. Lofton. He finds the fire to be undetermined, back to those issues that we talked about. And what's in the magnifying glass out to find this in the claims file. But in the claims file under ER 458, this is what it says. The expert provided a written report, and he also provided an oral report. Here's his oral report. I'm going to read his oral report from the claims file record, and you can verify this from ER 458. Here's what it says. Received call from cause and origin. He confirmed that it appears the first fire was caused by a halogen lamp plugged in, located in the crawl space. The second fire is undetermined. At this time, cause and origin advised there is a possibility that it may have been a rekindle, or something more Counselor, that red light flashing on the stand means your time has been used up. And the number that shows 45 seconds is time beyond your, a lot of time. However, because our questions have taken up a lot of your time, we want you to answer any question that Judge Bend has, or Judge McEwen has. I'm going to add three minutes to your clock. So Stacy. Thank you, Judge Gould. For the, let's get to the digital issue, because I think that's what you're talking about, lack of cooperation. Let me go through the facts on that real quickly, and I includes your rebuttal time, so just keep that in mind. Yeah, that's going into my rebuttal time too? Total time. Yeah, okay. All right, let me get to this digital issue. So here's what happened. So the streeters are asked for their phone records. They give all their phone records within 48 hours. This gives calls when they were made, to whom they were made, how long they were, that USA has those records. Then they say, we want your phones, and we want your computers. Our clients give them their phones and their computers. The USAA then goes to, they are presented to one source. One source gets that information. They download the information from the phones to their database. It's our expert, our IT's expert, that that was done incorrectly. So what happened then, one source sends that information to USAA. USAA's claims representative is looking at the phone records, and looking at what they got from one source, and they're not matching. In other words, the phone records tell the details, but yet they, the information that they got from one source doesn't coincide, and there appears to be phones missing. They call our clients, and they say, it looks like you have deleted information. Counsel, do you want to save the remaining minute, 20 seconds, for a rebuttal argument? Well, I think I'm just going to go for it, Your Honor, and I'll, if you want rebuttal, I'll look at your, you can give it to me, but I got to finish this point. So the point is that then, that's when our client decided, wait a minute, we haven't, we haven't deleted anything, and so at that point is when USAA said, okay, we're hiring an attorney, and we are going to ask for a sworn statement under oath, and so that's when our client got an attorney, repeatedly asked for information from USAA, and never got it. For 17 months, we don't get anything, and then after we get involved, and they know that this is headed for litigation, what do they do? Then they start paying, but I want to make this point to the panel before my time is up. There's substantial amounts of money that haven't been paid that are owed under the insuring agreement. Montana provides very clearly that if an individual is forced into litigation to get the amounts that they're entitled to, in other words, having to hire an attorney and enforce the issue, that they are entitled to attorney's fees and costs. King v. State Farm provides that those costs are non-taxable costs. That means we get expert witness fees, too, and so it's a big thing. Thank you, counsel. Your time is up. Thank you. I wish I had more time to go through this. My point being... You know, we have your briefs, and we have the opposing briefs, and then we have our reply briefs, so we have quite a bit of background, plus all the documents you've indicated. My point is that this is absolutely an incorrect decision. There's significant issues on cooperation itself is an issue of fact here that should have been presented to the jury. Thank you. I appreciate your time. Yes, thank you. Now we'll hear from Apelli. And if Apelli wants the extra three minutes that I gave to your colleague, we'll add that to your time, too. Thank you, Your Honor. It's certainly fine to add it, and we'll see if the panel believes that that much time is necessary for our response. May it please the Court? My name is Jeremy Mosley, and I represent USAA. This case is about plaintiffs' undisputed refusal to provide access to cell phone data. While USAA was investigating the suspicious circumstances surrounding two fires that occurred within 24 hours, the second fire of which, local law enforcement said, was a clear-cut case of arson. So in response to the brand-new argument we heard from Mr. Dale this morning, that there was no reasonable basis to even suspect arson, the record contradicts that plainly. USAA was told by local authorities, this is arson. The question is, who did it? The point he brought up, apparently in this small print, is he said that the second fire was undetermined, and then how does that figure into the fact that ultimately it was determined to be arson? The argument, Your Honor, that I heard from Mr. Dale is it was unreasonable for USAA to keep asking for this information. This was not a legitimate investigation because there was no basis to claim that the streeters were involved in the fire. And the record contradicts that because on page 1644 of the record is where in the claim notes, Ms. Ritchie notes that she was told by local authorities this is a clear-cut case of arson. So the first question is, is it reasonable for an insurance company to investigate and ask for cell phone data when they've been presented with arson? That's the first prong, and the undisputed facts show no reasonable juror could say it was unreasonable to ask for cell phone data when you're investigating a case of arson and trying to determine who could be involved in committing that arson. Just so we're clear, we have we have the matter of the investigator under the standards of National Fire Protection in those categories, and then you also had separately an inquiry by law enforcement, correct, in terms of an investigation involving potential arson. You have multiple investigations? Yes, you have more than just one investigation going on. That's correct, and so for example the first investigation related to the local authorities, yes, is still ongoing throughout that time frame and isn't even completed by the time USAA essentially says, well I guess we're gonna have to make payments because we can't get to the data and make a determination of whether arson was here. Whereas the investigator that USAA hired that Mr. Dale just referenced, what he actually says is I can't determine anything yet, you should keep working with law enforcement and see what else comes of it. So certainly left open and it was reasonable, I would say as a matter of law, that USAA would say we need to investigate this potential arson. Now going to the legal framework that is presented to this court and whether it was handled correctly in the district court. The policy requires cooperation and the policy says as a condition precedent to coverage or to a lawsuit, I should say, you have to comply with the duties of the policy before you can sue us. That's the condition in the policy. The district court correctly analyzed Montana law and the Steadley case and in that case, although it dealt with the notice prejudice issue, if you will, the there are duties in an insurance policy that are placed on the insured and we find that those duties are enforceable and can void coverage if there is prejudice to the insurer as a result of that non-compliance. And in doing so, the court said it can't be a technical non-compliance, it has to be real non-compliance and the insurer has to be prejudiced. The court then identified the prejudice in that case, including the inability to complete the investigation properly and said this is essentially, well I should say, this is not de minimis prejudice. Well what the district court did here is just the flip side of the same coin, if you will, by saying the prejudice has to be material. That's essentially the framework in the Steadley case and all the district court did was say based on existing Montana law in addressing one duty under the policy, I'm going to take that same framework and apply it to another duty that applies to insureds under the same policy. And that decision of course was supported by the multiple other jurisdictions in the majority rule overall that allows for the fact that if you breach the duty of the policy, it can but only if there is prejudice to the insurer. When he started his argument, it was different than I had understood the briefing to be. So his first statement on the factual issue, he says, if whether it was in fact an incendiary fire and if not, then we don't have a cooperation issue to be addressed, which is not what I divined from the briefs but what was argued today. What is your response to that? So first, Judge McEwen, I agree with you. It is not in the briefs and this is a brand new argument. My response to it is what he, I understand that to mean, is that what he's really saying is this was not a reasonable request to make because according to him, there was no evidence of it being an incendiary fire. That goes to the first prong essentially of was it reasonable for USAA to investigate in asking these questions and I submit to you the evidence is clear. It was reasonable because what we're looking at at the time, the information the insurance company had, USAA had, was their own investigator had just said it could be a rekindle or it could be something worse. I can't really tell yet. He also went on to say that you should work with the law enforcement. Law enforcement has said we don't have enough for a suspect yet but this is a clear-cut case of arson. That's on page 1644 and again in that same note goes on to say have you talked to, it says NI which is going to be the named insured Mr. Streeter, have you talked to Mr. Streeter yet? So it's very clear that law enforcement is telling USAA they're still looking at Mr. Streeter for this fire and so the question to this court is simply was it reasonable then to ask for cell phone data for Mr. Streeter when he's still right there in the middle of this potential arson investigation and I would submit to you that as a matter of law it is reasonable. No reasonable juror could find that it is wrong to ask someone who's clearly at the center of this fire investigation for something like cell phone data and going beyond that the question becomes so once they failed to comply with that request did it prejudice USAA's investigation and again the undisputed facts show that it did because what we just heard from Mr. Dell I think actually proves the point of the prejudice. Mr. Dale says well I actually think that they downloaded the data incorrectly in the first place and that that's really the issue here. Well so go back to what Miss Ritchie actually said and asked about. Now from the beginning when USAA requested cell phone data Mr. Streeter resisted. He showed up to that very first meeting to turn over a cell phone for a data copy with his own release that he had created saying you will only look at the data on this and USA wasn't expecting that at all but what they said was okay you know what let's have one source copy the data so we at least have a copy we won't look at anything and then we'll go separately and confer with you and see what you'll allow us to look at. So that's what they did. So we start off right off the bat USA has been limited in what they're allowed to look at on the cell phone. Now when they look into what they're allowed to look at it raises questions. We have Verizon phone logs that say all these calls occurred all these texts occurred and then on the phone there's just blank there's nothing for two days. It's not and this is key it's not as though simply you know as we'll find out later Mr. Streeter's son-in-law is a key part of this investigation. It's not as though just one thread was deleted. It's all gone for two days. So Ms. Ritchie says what's going on? Is this an anomaly? Is this a data error? A technical error? Is there evidence that this is being hidden or deleted? How do we answer that question? And the response by the technician is my hands are tied. I can't even answer your question based on the limited release. The release has to be broader for me to even answer that question. And so she works with the technician to be able to answer provide a broader release and go back to Mr. Streeter and say this is what we need. Yet in doing so Mr. Streeter still says okay I'll give you a little more but he still doesn't authorize looking for data hiding or factory resets or things like that. And then a week later he revokes the whole thing and he testified in his deposition why he did that. Said I felt you were accusing me of something doing something wrong. So I put a stop to the whole process. Well that is the point. That is the problem. We were in fact looking to see whether he had done something wrong. And as soon as he felt that's what was going on he put an end to the investigation. That is an undisputed prejudice to USAA and fair to cooperate. Counsel I have a question for you on the duty to cooperate. Is that an implied obligation in all insurance contracts or is there a specific provision in the insurance agreement here that addresses a duty to cooperate? That is an express provision in this insurance policy and it is on page 1498 of the record. And what what's the language of that provision? I believe it Okay thank you. Now in going to that point I do note also a follow-up on Judge Gould's question that the district court did refer to Montana law in the Seymour case in terms of where there was initial cooperation and at some point in time there was not continued cooperation. And the Montana court clearly stated at that point in time then there's a lack of cooperation. So it isn't that there has to be there may be cooperation initially and then it was diverted in some way and I think that's essentially what you're arguing here that there was initial cooperation and some payment but ultimately it had to stop because there was an unanswered question essentially. Yes your honor and what that goes to is can you say if I cooperate here that's enough and I don't have to cooperate here. That's essentially the proposition I understood of the Seymour case if I'm not mistaken. Yes and to expand on that Judge Bennett the the Seymour case directly relates here because what happened in that case is they waited until after litigation had been filed before they then provided an estimate for the repair of the car that had been requested ahead of time. And the same thing happened here in the sense that they revoked their authorization to look at cell phone data and then only after they'd sued for bad faith did they take that away and say now that a protective orders in case we'll let you look at it. And so that's subsequent compliance is not sufficient because it's still a failing to comply before you file the lawsuit the condition proceeding in the terms of what does that duty to cooperate look like. While it is a specific provision and says you must cooperate when USAA asked for this cell phone data the letter they sent specifically said we are asking for this and cited to the duty to cooperate in the policy. Basically saying when when the policy says cooperate in this context in this claim it means we want this information from you. And again rather than just willingly providing all they said no I'm coming in with my own release in limiting what you're allowed to get to. That is the the fundamental problem here. So they at first they said that their access was actually suspended but then it was determined later that they actually revoked access is that right? Well I think your honor it's really an issue of semantics. He says Mr. Streeter says it's suspended and it doesn't lift that suspension if you will until after he's already sued for bad faith. You know to me that was a revocation and whether it's suspended or revoked he's still saying I refuse to cooperate and what he said in his deposition on page 1775 of the record in talking about that was to say you accused me of something so I put a stop to the process. So whether you say I stopped cooperating I revoked I suspended it's the same thing legally. And he can't I mean the district court said is you can't really append conditions to your cooperation that are not part of the policy. That's exactly right this is a contractual obligation to cooperate and there's nothing in there that says I'm allowed to say I won't cooperate until you answer every question I have for you or provide any part of your file. That does turn the cooperation provision on its head as the district court determined. And so I submit to this court it is not an eerie guess it is not a leap it is not a jump to say that Montana would recognize the duty to cooperate in a contract like this can be enforced not on technical violations but can be enforced to void coverage when you have real prejudice to the insurer that is substantial or material not simply de minimis. That's what steadily stands for the Montana Supreme Court and that's essentially the framework followed here. Similar to the undisputed facts on that cell phone data demonstrate the prejudice and demonstrate that they're to cooperate and no reasonable juror could find otherwise. The final thing I'll raise although it wasn't addressed in case the court has any questions about why certification would be is unnecessary and inappropriate here. Well there was clearly no requested for certification below before the district court correct? Absolutely your honor and that is in fact the first reason is that this court has said there's a rebuttable presumption against certification when it's not asked for essentially until you've already lost. As a district judge I'll tell you many times it's very tempting just to say fine send it to the state appellate court and clears my docket for a while I guess so I guess that's very very important first step many times said below to ask for it not to wait until you get to the circuit court on appeals to ask for it. Right and the bigger concern is when you've already lost and now you're essentially looking for a second bite of the apple to say well I thought they got it wrong so now I'm gonna ask that the Supreme Court weigh in. The second reason as I said is it's it's a reasonable application of steadily it doesn't take a big leap and it's not a guess and the third issue to keep in mind we've cited a footnote in our brief is that Montana has now added a statutory duty to cooperate which is not at issue here and what that means is this case only has half the equation that future cases will have and that would be another reason why certifications improper because it's not going to have that big impact on what happens next in future cases here we're only looking at a contractual duty to cooperate the next cases are going to involve both a contractual duty if it's in the policy and a statutory duty and that framework but the Montana Supreme Court can't address that in this case because it wasn't enacted yet so we're in that narrow area if you will where we can't even say that certification here would allow you know for an effect on when investigating a clear-cut case of arson it is reasonable for USAA to request cell phone data they requested reasonable information to find out why there was this anomaly and mr. Streeters refusal to provide that and revoking or suspending his authorization materially prejudiced USAA's investigation and no reasonable juror could find otherwise and for this reason we ask that this thank you counsel well the time is as one on appellant's argument what I'm going to do is add an extra one minute for rebuttal by appellant if appellant counsel you want to make a one-minute rebuttal yes if you wanted to have a one-minute rebuttal okay you get you get a minute but you yeah you have to stop when the light turns red after the minute thank you thank you I appreciate the opportunity one big point here and that is that our IT person our IT expert is testifying that there was no information that was deleted there was no information that was destroyed in any way all of that information was still with one source and there's absolutely no issue that the speeders did anything incorrectly with their phone but back to this point on timing here in terms of the the letter suspending it we encourage the court to look at luckily the clerk allowed the sworn statement under oath the streeters set for four and a half hours and were interrogated by USAA's attorneys they had every opportunity to request that that data that they said was suspended and they didn't do it council so your light is red and your time is up and I'm gonna follow the practice that former Chief Justice Rehnquist used to have at the Supreme Court the one that the time's up you just say your time is up sorry and we because we have to go on the other case I understand your honor and I appreciate your opportunity to Streeter case shall now be submitted and the parties will hear from the panel in due course
judges: McKEOWN, GOULD, Bennett